UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN M. REIGH,<br><br>        Plaintiff,<br><br>        v.<br><br>WESTROCK PACKAGING SYSTEMS, LLC,<br>WESTROCK CONVERTING, LLC,<br>WESTROCK SERVICES, LLC,<br>WESTROCK CP, LLC, and<br>WESTROCK MWV, LLC,<br><br>        Defendants. | CAUSE NO.: 3:20-CV-1046-TLS |

**OPINION AND ORDER**

On January 8, 2020, the Plaintiff John M. Reigh sustained an injury while working for Venture Logistics, Inc. at the Defendants' Mishawaka facility when he was struck by a stack of cardboard being moved with a forklift by the Defendants' employee Jose Carrera. On November 12, 2020, the Plaintiff filed a Complaint [ECF No. 6] in the St. Joseph County Superior Court bringing a negligence claim against Defendants WestRock Packaging Systems, LLC, WestRock Converting, LLC, WestRock Services, LLC, WestRock CP, LLC, and WestRock MWV, LLC (collectively Defendants or WestRock). The Plaintiff alleges that Carrera was negligent by failing to keep a proper lookout, failing to keep control of the forklift, and failing to stop the forklift before colliding with the stack of cardboard that struck the Plaintiff. On December 23, 2020, the Defendants filed a Notice of Removal [ECF No. 1] based on the Court's diversity jurisdiction under 28 U.S.C. § 1332.

Now before the Court is the Defendants' Motion for Summary Judgment [ECF No. 41], which is fully briefed and ripe for ruling. The Defendants argue that the Plaintiff lost his status as a business visitor invitee when he entered a restricted area and that the Defendants did not breach

the duty owed the Plaintiff as a mere licensee to refrain from willfully or wantonly injuring him or acting in a manner to increase his peril. The Court denies the motion because there is a genuine dispute of fact as to whether the Plaintiff retained his status as an invitee at the time he was injured such that the Defendants owed him a duty of reasonable care.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

In ruling on a motion for summary judgment, a court construes all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

## MATERIAL FACTS

The Defendants own and operate a manufacturing facility in Mishawaka, Indiana. Compl. ¶ 3, ECF No. 6. For fourteen years, the Plaintiff repeated a daily routine of pick-ups and drop-

offs at the Mishawaka facility as part of his employment as a truck driver first with All Truck Transportation (All Truck) and then with Venture Logistics, Inc. (Venture). Pl. Ex. 1, 18:24–19:6, 25:13–21, 38:25–39:16, ECF No. 54-1.[1] He received daily delivery assignments in the Shipping and Receiving Office (Shipping Office), which he accessed by entering the Mishawaka facility through the driver's entrance located at the exterior of the building. *Id.* 29:15–30:20, 35:16–24. On January 8, 2020, the Plaintiff was working for Venture when he entered the Mishawaka facility. Compl. ¶ 1; Pl. Ex. 1, 14:8–14.

Sarah Waldon (the Defendants' shipping manager) and Jose Carrera (the Defendants' shipping coordinator) worked inside the Shipping Office to assist drivers with daily assignments. Pl. Ex. 1, 27:9–20; Pl. Ex. 3, 11:8–16, 12:14–13:13, ECF No. 54-3. Waldon worked as shipping manager from March 2018 to September 2020, and she interacted daily with the Plaintiff. Pl. Ex. 3, 9:22–10:12, 19:14–17. While an employee of Venture, the Plaintiff received his delivery assignments in the Shipping Office from driver supervisor Jeff Hobkirk, also a Venture employee. Pl. Ex. 1, 39:6–12, 48:11–23. If Hobkirk was not present, the Plaintiff would get his assignment from Waldon or Carrera. Pl. Ex. 1, 89:25–90:3.

Another door in the Shipping Office led to the loading dock area, which Waldon referred to as the "Shipping Floor." Pl Ex. 1, 61:12–17; Pl. Ex. 3, 39:2–10, 49:3–19, 63:10–14. A window in the Shipping Office looked out over the loading dock. Pl. Ex. 1, 49:20–21, 56:22–57:5. Waldon testified that she saw non-WestRock employees just outside that Shipping Office door on the Shipping Floor about a dozen times prior to January 8, 2020, although she did not recall seeing truck drivers in that area other than on the date the Plaintiff was injured. *Id.* 39:11–41:1,

---

[1] Because the Defendants submitted unpaginated deposition transcripts, *see* ECF Nos. 42-2, 42-4, 42-5, the Court cites the transcripts submitted by the Plaintiff for his own deposition and that of Waldon, *see* ECF Nos. 54-1, 54-3. For Sovine's deposition, which the Plaintiff did not submit, the Court cites the CM/ECF pagination of the Defendants' submission when the Court is able to identify with certainty the cited pages. *See* ECF No. 42-5.

64:10–66:8. The door that led from the Shipping Office to the Shipping Floor was not locked at any point prior to January 8, 2020, and anybody could go through the door. *Id.* 66:9–23. Outside the Shipping Office and visible from the Shipping Floor, there was a sign attached to a yellow railing that provided "NOTICE NO DRIVERS BEYOND THIS POINT," beyond which was what Waldon described as the "loading dock area"—an area where trucks were loaded and unloaded with product by forklifts. Pl. Ex. 3, 72:23–73:25; Pl. Ex. 7, pp. 3–4, ECF No. 54-7; Pl. Ex. 6, ¶ 6, ECF No. 54-6. The "NOTICE NO DRIVERS BEYOND THIS POINT" sign was present the entire time Waldon worked at the Mishawaka facility. Pl. Ex. 3, 88:23–89:7. These photos from the Defendants' post-incident report depict the area of the Shipping Floor immediately outside the Shipping Office and the "NOTICE NO DRIVERS BEYOND THIS POINT" sign, the yellow railing, and the yellow safety line on the floor:

  

Pl. Ex. 7.

On January 8, 2020, the Plaintiff entered the Shipping Office by the main entrance to get instructions. Pl. Ex. 1, 29:24–30:20, 49:9–15, 53:15–54:3. No one was in the Shipping Office. *Id.* 49:19, 54:4–6. The Plaintiff looked out the window and saw Carrera driving a forklift in the dock area. *Id.* 49:19–23, 56:18–57:9. The Plaintiff waived at Carrera and thought they had made eye

contact, but "obviously [they] didn't." *Id.* 49:19–24, 59:6–60:7, 63:4–6. The Plaintiff exited through the door from the Shipping Office to the Shipping Floor to an area between the door and a stack of cardboard. *Id.* 49:25–50:10, 59:13–16, 61:1–17; Pl. Ex. 3, 49:3–19. The area between the Shipping Office door and the dock was demarcated by a yellow "safety line." *Id.* 41:5–13, 18–25, 61:12–17, 62:25–63:3, 64:15–18. The Plaintiff was standing behind the safety line but also behind a stack of cardboard waiting for Carrera to park his forklift and come speak to him. *Id.* 49:9–50:10, 66:1–67:11. The Plaintiff could not see Carrera from where he was standing. *Id.* 67:12–16. When Carrera attempted to pick up the cardboard with the forklift, the cardboard was pushed over the safety line and struck the Plaintiff. *Id.* 50:5–10, 67:4–11.

The Plaintiff had entered this area immediately outside the Shipping Office hundreds of times during the previous fourteen years and had never been reprimanded for doing so. *Id.* 65:18–25; Pl. Ex. 6, ¶ 5. Carrera testified that the "area was considered for anyone outside WestRock that didn't work there, to be able to walk—I mean, or step foot in there." Pl. Ex. 2, 27:13–23, ECF No. 54-2. This included drivers employed by Venture. *Id.* 28:18–23. The Plaintiff knew that, as a non-WestRock employee, he was not authorized to go on the docks, which was made clear to him when he first started working at the Mishawaka facility. Pl. Ex. 1, 34:11–18, 39:17–40:7. The area was marked off by a yellow line that was not to be crossed, which was in place when he worked for both All Truck and Venture. *Id.* 41:5–13, 18–25. If he had crossed the safety line, the Plaintiff would have been in a restricted area. *Id.* 65:12–17. When he was struck by the cardboard, the Plaintiff had not crossed the safety line and he was standing two feet away from the docks behind the safety line. *Id.* 65:7–11, 66:7–16.

Eric Sovine, WestRock's General Manager, testified that the entire area outside the Shipping Office is the dock area. Def. Ex. E, ECF No. 42-5, p. 21–22 of 52; Pl. Ex. 3, 56:2–3. Sovine testified that it was common practice at the time of the Plaintiff's injury for loads to be

5

parked or staged in the location where the stack of cardboard that injured the Plaintiff was located. Def. Ex. E, ECF No. 42-5, pp. 13–14 of 52. Waldon testified that the area directly outside the Shipping Office was an area where there was not any loading or unloading of product. Pl. Ex. 3, 75:23–76:18; *see also id.* 63:15–23; Pl. Ex. 8 (Feb. 15, 2022 site inspection photo). Waldon does not recall Sovine ever coming to the Shipping Office. Pl. Ex. 3, 56:11–15.

The Plaintiff testified generally that there was signage in the Mishawaka facility indicating where he could or could not go as a driver. Pl. Ex. 1, 42:10–12. The same signage was posted when he worked for All Truck and for Venture. *Id.* 42:13–25. While he could not recall what the signs said, he thought they might have said "personnel only." *Id.* 42:15–18.

Waldon testified that she remembered a sign on the Shipping Office side of the door leading to the Shipping Floor that had a list of six warnings, including: "ATTENTION: 1. Authorized Personnel Only. 2. Fork Truck Traffic—Use Designated Walkways." Pl. Ex. 3, 28:10–25; Def. Ex. D, Ex. D-1, ECF No. 42-4, p. 117 of 118; Def. Ex. D, D-2, ECF No. 42-2, p. 118 of 118. She understood the term "Authorized Personnel" to mean the Defendants' employees who had business beyond the Shipping Office door. Pl. Ex. 3, 29:5–11. She recalled the sign being on the door on January 8, 2020. *Id.* 28:23–25. However, she also testified that the sign was added to the door, but she could not remember when. *Id.* 27:22–28:1. The Plaintiff avers that the "ATTENTION" sign was not present on the Shipping Office door at any time on or prior to January 8, 2020. Pl. Ex. 6, ¶¶ 3, 4. The Defendants' post-incident report did not contain any pictures of the "ATTENTION" sign, even though it contained the pictures reproduced above in this Opinion of the "NOTICE NO DRIVERS BEYOND THIS POINT" sign and the yellow handrail. *See* Pl. Ex. 7.

## ANALYSIS

The Plaintiff's negligence claim is based on premises liability. He alleges that, while in the course of his employment with Venture, he was at the Defendants' Mishawaka facility on the Shipping Floor when he was injured as a result of a forklift being operated in a negligent manner by the Defendants' employee Jose Carrera. Compl. ¶¶ 3–5. The instant motion for summary judgment turns on the determination of the duty the Defendants owed the Plaintiff based on his visitor status at the time he was injured on the Shipping Floor just outside the Shipping Office.

The elements of a negligence claim under Indiana law are "(1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Yost v. Wabash Coll.*, 3 N.E.3d 509, 515 (Ind. 2014) (quoting *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011)).[2] For purposes of premises liability, a person entering the land of another comes upon the land as an invitee, a licensee, or a trespasser. *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991); *Pickering v. Caesars Riverboat Casino, LLC*, 988 N.E.2d 385, 389 (Ind. Ct. App. 2013). A specific duty corresponds to each of these three established categories of visitors:

> A landowner owes the highest duty of care to an invitee, that duty being to exercise reasonable care for the invitee's protection while he is on the premises. Landowners owe a licensee the duty to refrain from willfully or wantonly injuring him or acting in a manner to increase his peril. This includes the duty to warn a licensee of any latent danger on the premises of which the landowner has knowledge. Finally, the duty owed to a trespasser is the duty to merely refrain from wantonly or willfully injuring him after discovering his presence.

*Rhoades v. Heritage Invs., LLC*, 839 N.E.2d 788, 791 (Ind. Ct. App. 2005) (cleaned up). Thus, the first step is to determine the plaintiff's status, which in turn defines the duty owed. *Pickering*, 988

---

[2] As neither party argues otherwise, the Court applies Indiana substantive law to this negligence dispute brought under the Court's diversity jurisdiction. *Jeffords v. BP Prods. N. Am., Inc.*, 963 F.3d 658, 661 (7th Cir. 2020) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426–27 (7th Cir. 1991)).

N.E.2d at 389. Whether a duty exists is a question of law for the court. *Jeffords*, 963 F.3d at 661 (citing *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 537 (1958); *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018)).

The Indiana Supreme Court has explained that "a person is an invitee if the possessor [of land] encourages another to enter to further his own purpose such that there arises the implicit assertion that reasonable care has been exercised to make the place safe for the one who came for that purpose." *Pickering*, 988 N.E.2d at 392 (quoting *Burrell*, 569 N.E.2d at 641) (cleaned up). One category of invitee is the "business visitor," which is defined as "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land." *Burrell*, 569 N.E.2d at 642 (quoting Restatement (Second) of Torts § 332); *see Pickering*, 988 N.E.2d at 390. "[T]o *retain* invitee status, 'the invitee must use the owner's premises in the usual, ordinary, and customary way.'" *Pickering*, 988 N.E.2d at 392 (quoting *St. Mary's Med. Ctr. of Evansville, Inc. v. Loomis*, 783 N.E.2d 274, 282 (Ind. Ct. App. 2002)). An invitee may lose his status "when the invitee exceeds the scope of the invitation." *Id.* "Licensees and trespassers are defined as those who enter land of another for their own convenience, curiosity, or entertainment and take the premises as they fine them." *Rhoades*, 839 N.E.2d at 791 (citing *Taylor v. Duke*, 713 N.E.2d 877, 881 (Ind. Ct. App. 1999)). "Unlike trespassers, however, licensees have a privilege to enter or remain on the land by virtue of the landowner's or occupier's permission or sufferance." *Id.* (citing *Taylor*, 713 N.E.2d at 881).

It is undisputed that the Plaintiff was a business visitor invitee when he initially entered the Defendants' Shipping Office at the Mishawaka facility in the scope of his work as a truck driver for Venture. However, the Defendants contend that the Plaintiff's status changed to that of a licensee when he chose to enter a restricted area for the Defendants' employees only, exceeding the scope of the invitation. The Plaintiff responds that he retained his invitee status at

8

the time he was injured because the area just outside the Shipping Office was within the scope of the customary use granted by the Defendants. Based on the evidence before the Court, genuine disputes of material fact preclude the Court from determining as a matter of law the Plaintiff's status as either an invitee or a licensee and the resulting landowner duty.

      First, there is a genuine dispute of material fact whether the "ATTENTION" sign was present on the interior side of the Shipping Office door at any time prior to the Plaintiff's January 8, 2000 injury. Sarah Waldon, the Defendants' shipping manager, testified that the ATTENTION sign was present on that date. However, she also testified that the sign was added during her employment at WestRock from March 2018 through September 2000 but she did not recall when it was added. In contrast, the Plaintiff avers that the sign was not present the day of his injury. The Plaintiff also notes that while the Defendants' post-incident investigation report included photographs of the "NOTICE NO DRIVERS BEYOND THIS POINT" sign on the yellow railing on the Shipping Floor, the report included no photographs of an "ATTENTION" sign inside the Shipping Office. Based on the evidence currently before the Court, a trier of fact could reasonably conclude that the "ATTENTION" sign was added after January 8, 2020.

      Second, there is a dispute of fact as to whether the area immediately outside the Shipping Office door was part of the loading dock that was off limits to drivers or rather a pedestrian space to which the Plaintiff, a truck driver, was permitted access. The Plaintiff contends the prohibited dock area was beyond the yellow safety line and beyond the sign attached to the yellow railing that read "NOTICE NO DRIVERS BEYOND THIS POINT." The Plaintiff testified that he had exited the Shipping Office but that he had not crossed the yellow safety line or passed the sign and thus had not entered the restricted dock area at the time he was struck by the cardboard being moved by the forklift. Moreover, the Plaintiff had been in the very same area on the Shipping Floor between the Shipping Office door and the yellow safety line hundreds of times during his

9

fourteen-year tenure at the Mishawaka facility and had never been reprimanded. In addition, Carrera, an employee of the Defendants, testified that the area where the Plaintiff was injured was accessible to non-WestRock employees.

In contrast, Waldon, a former employee of the Defendants, testified that although she had seen non-WestRock employees in this area of the Shipping Floor, she had not seen truck drivers in that area until the Plaintiff was injured there. However, Waldon also testified that the area where the Plaintiff was injured was an area where there was no forklift traffic. General Manager Eric Sovine testified that the entire area outside the Shipping Office was part of the prohibited docks. Yet, Sovine's cited testimony does not address the yellow safety line, the yellow railing, or the NOTICE sign, and Waldon testified that she did not remember seeing Sovine in the Shipping Office. A reasonable jury could conclude that the Plaintiff had permission to enter the area of the Shipping Floor where he was injured and was using the Defendants' premises in the usual, ordinary, and customary way at the time.

The Defendants argue that this case is comparable to *Pickering*, in which the plaintiff went up a parking garage ramp and "ducked underneath and crossed yellow caution tape" the premises owner had placed to prevent traffic from accessing the rooftop level of a parking garage. 988 N.E.2d at 387. After finding the rooftop doors locked, the plaintiff turned around, headed back down the ramp, ducked under the caution tape, and fell and fractured his pelvis. *Id.* The court concluded that the plaintiff lost his initial business visitor invitee status and became a "mere licensee" when he exceeded the scope of the invitation by passing under the caution tape and entering the restricted area. *Id.* at 392, 393. *Pickering* is not persuasive because the facts viewed in the light most favorable to the Plaintiff in this case support a finding that he had not entered the restricted dock area at the time he was injured and thus retained his business visitor invitee status.

Rather, the Court agrees with the Plaintiff that the facts of this case are more akin to those of *St. Mary's Medical Center of Evansville v. Loomis*, in which Dr. Loomis had surgery privileges at the hospital and, while visiting patients at the hospital, he stopped at a pantry for a cup of coffee. 783 N.E.2d at 277. While in the pantry, Dr. Loomis slipped and fell, injuring his elbow. *Id.* at 277–78. The pantry was regularly used for coffee breaks by Dr. Loomis, other physicians, and the hospital's employees. *Id.* The trial court instructed the jury that Dr. Loomis was an invitee to whom the hospital owed a duty of reasonable care. *Id.* at 278. On appeal, the hospital argued that Dr. Loomis was a licensee because he "exceeded the scope of his invitee status upon entering the pantry, as signs posted on the pantry doors read 'Employees Only'" and Dr. Loomis was not a hospital employee. *Id.* at 282. However, the court found the evidence "showed that the signs on the pantry doors were not meant to exclude the physicians" but rather "were a courtesy way of telling families, patients, and visitors that this is an area that you should not be in" and that Dr. Loomis had been using the pantry for years and had never been asked to leave. *Id.* at 282–83 (cleaned up). Thus, the court held that "it was 'usual, ordinary, and customary' for physicians to use the pantry" and "that an invitee instruction was warranted." *Id.* at 283. Similarly, the Plaintiff in this case entered the area between the Shipping Office door and the yellow railing with the "NOTICE NO DRIVERS BEYOND THIS POINT" sign hundreds of times over the fourteen years he had worked at the Defendants' Mishawaka facility as a truck driver without being reprimanded.

Thus, when the evidence of record is viewed in the light most favorable to the Plaintiff, the Plaintiff retained his business visitor invitee status when he left the Shipping Office but did not move beyond the yellow safety line and the "NOTICE NO DRIVERS BEYOND THIS POINT" sign. Although normally a question of law for the court, here the existence of a duty turns on factual issues that must be resolved by the trier of fact. *See, e.g.*, *Rhodes v. Wright*, 805

11

N.E.2d 382, 386 (Ind. 2004) (*Douglass v. Irvin*, 549 N.E.2d 368, 369 n.1 (Ind. 1990)). For these reasons, the Court denies the Defendants' motion for summary judgment.

To the extent the Plaintiff's response brief asks the Court to enter summary judgment in his favor on the issue of duty, the motion is not properly before the Court as Northern District of Indiana Local Rule 7-1(a) requires that motions be filed separately. Regardless, the genuine disputes of material fact on the issue of duty identified above preclude summary judgment for either party. Also, because no expert testimony was necessary for this ruling, the Court declines to consider the *Daubert* issues raised in the Defendants' motion. The parties will have an opportunity to raise evidentiary objections once the Court sets the deadlines for pretrial filings.

## CONCLUSION

For the reasons set forth above, the Court hereby DENIES the Defendants' Motion for Summary Judgment [ECF No. 41].

SO ORDERED on June 11, 2024.

    s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT